UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DORIS HABY,

               Plaintiff,

-v-

TIME WARNER CABLE PENSION PLAN,

               Defendant.

20-CV-4119 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiff Doris Haby brings a claim under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, against Defendant Time Warner Cable Pension Plan (the "Pension"), arising from the Pension's determination that its pension plan (the "Plan") did not entitle her to death benefits. Haby challenges the Pension's interpretation of the Plan and asserts that the fact that her brother — a former employee of Time Warner Cable ("TWC") — listed her as his beneficiary entitled her to benefits following his death. Haby and the Pension now both move for summary judgment. For the reasons that follow, Haby's motion is denied and the Pension's motion is granted.

**I.    Background**

    Time Warner Cable previously employed Haby's brother, David Clifton, who became fully vested in TWC's Plan before his employment there ended in June 1997. (Dkt. No. 27 ¶¶ 1–2). In 2018, Clifton selected Haby as his beneficiary under the Plan. (Dkt. No. 27 ¶ 3.) Haby alleges her brother's pension had a value of $41,840.72 as of October 2018. (Dkt. No. 1 ¶ 5.)

    Clifton died on October 28, 2018. (Dkt. No. 27 ¶ 3.) After her brother's death, Haby contacted the Pension to inquire about her right to death benefits, which the Pension treated as a formal ERISA benefit claim. (Dkt. No. 27 ¶ 5; Dkt. No. 24-2 at 2.) The Pension informed Haby

in writing that it had determined that she was not entitled to death benefits.[1] (Dkt. No. 27 ¶ 5; Dkt. No. 24-2 at 3–4.)  The basis for the Pension's determination was Section 1.3 of the Plan (Dkt. No. 24-2 at 3–4), titled "Participants Who Terminated Employment Prior to Restatement Date," the relevant portion of which follows:

> The benefits provided hereunder with respect to any Participant who retired or whose employment with an Employing Company otherwise terminated prior to the Restatement Date will, except as otherwise specifically provided herein, be governed in all respects by the terms of the Plan as in effect as of the date of the Participant's retirement or other termination of employment.

(Dkt. No. 24-2 at 89.)  The Pension read Section 1.3 to create a "general rule 'that a participant's benefit will be governed by the terms of the Pension Plan *in effect as of the date of the participant's termination of employment*, unless otherwise specifically provided in the Pension Plan." (Dkt. No. 24-2 at 3) (emphasis added).  The provision of the Plan that would entitle Haby to death benefits became effective on January 1, 2000 (Dkt. No. 24-2 at 4, 107), after Clifton's termination of employment in 1997.  That provision, Section 8.1(a)(i), reads as follows:

> Death Prior to Benefit Commencement. (a) Effective January 1, 2000, (i) if a Participant dies with a nonforfeitable interest and prior to his Benefit Commencement Date, his Beneficiary shall receive monthly payments in the form and the amount such Beneficiary would have received if the Participant had begun receiving benefits at the earliest date permissible under the terms of the plan (assuming the Participant had terminated employment the day before his death if he died during employment) and had specified his Beneficiary to receive 50% of the monthly amount payable to him.[2]

---

[1] Section 11.4 of the Plan gave the Pension "exclusive authority and sole and absolute discretion to interpret the Plan, to determine eligibility for benefits and the amount of benefit payments . . . and decide all matters arising in connection with the interpretation, administration and operation of the Plan or the determination of eligibility for benefits or the amount of benefit payments." (Dkt. No. 24-2 at 114.)

[2] The Pension acknowledged that Clifton was a participant who died with a nonforfeitable interest and prior to his benefit commencement date.  (Dkt. No. 24-2 at 3.)  The Pension only disputed — and still disputes — whether Section 8.1(a) applied to Clifton since it became effective after his termination.

(Dkt. No. 24-2 at 107.)  The Pension thus concluded that there was no death benefit payable to Haby.  (Dkt. No. 24-2 at 4.)

Haby disagreed with the Pension's interpretation of Section 1.3 and appealed.  (Dkt. No. 24-2 at 6–8.)  In her appeal, Haby noted that Section 1.3 itself states that it applies "with respect to any Participant [whose employment] terminated *prior to the Restatement Date*." (Dkt. No. 24-2 at 7) (emphasis added).  The Restatement Date of the Plan was January 1, 1997 (Dkt. No. 24-2 at 87); Clifton's last day of employment at TWC was in June of 1997.  (Dkt. No. 27 ¶ 2.)  So, according to Haby, the terms of the Plan in effect at the time of Clifton's termination did not govern whether Haby was entitled to death benefits.  Instead, all the provisions of the Plan as of the Restatement Date governed whether she was entitled to death benefits.  (Dkt. No. 24-2 at 7.)  The Plan as of the Restatement Date had Section 8.1(a)(i) as reproduced above.  (Dkt. No. 24-2 at 107.)  Since Clifton died after January 1, 2000, when Section 8.1(a)(i) became effective, Haby asserted she was owed death benefits.  (Dkt. No. 24-2 at 7–8.)

But after considering Haby's appeal, the Pension upheld its prior denial.  (Dkt. No. 24-2 at 27–30.)  The Pension explained in a letter to Haby that Section 8.1(a)(i) would apply only if Clifton had worked at least one hour for TWC after January 1, 2000.  (Dkt. No. 24-2 at 27.)  The Pension otherwise maintained its position that the Plan terms in effect at the time of Clifton's 1997 termination controlled.  *Id.*  The Pension's letter also advised Haby that its appeal decision was final but that she could challenge it under Section 502(a) of ERISA.  (Dkt. No. 24-2 at 29–30.)

Though not addressed by either party in the administrative proceedings described, Section 16.3 was an additional provision that governed how the Pension should make benefit determinations.  This section, under Article XVI: General Provisions of the Plan, provided, in

3

relevant part, that "[u]nless otherwise expressly provided in the Plan, all benefits in respect of any Participant shall be determined in accordance with *the provisions of the Plan as in effect on such Participant's Termination of Employment.*"  (Dkt. No. 24-2 at 129) (emphasis added).

On January 17, 2020, having exhausted her appeal rights as required under the Plan and ERISA, Haby brought this action against the Pension.  (Dkt. No. 1.)  Haby claims the Pension's final denial of her request for death benefits was an abuse of discretion.  (Dkt. No. 1 ¶ 16.)  Haby moved for summary judgment on September 21, 2020.  (Dkt. No. 24.)  The Pension cross-moved for summary judgment on October 19, 2020.  (Dkt. No. 25.)

## II.    Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense."  *Cohen Lans LLP v. Naseman*, No. 14 Civ. 4045, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).  "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, i.e., that reasonable jurors could differ about the evidence."  *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014).  The Court must view all evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party."  *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks and citations omitted).

**III.    Discussion**

There are no material facts in dispute.  (Dkt. No. 24 at 1; Dkt. No. 26 at 2.)  The parties also agree on the proper standard of review.  (Dkt. No. 28 at 1; Dkt. No. 29 at 2.)  The only issue before the Court is whether the Plan entitles Haby to death benefits.

The Pension determined that the Plan did not entitle Haby to death benefits.  Because Section 11.4 of the Plan gives the Pension discretion to interpret the Plan (Dkt. No. 24-2 at 114), the Court reviews the Pension's interpretation for an abuse of discretion.  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Review of the Pension's interpretation under an abuse of discretion standard must be "highly deferential."  *Jordan v. Retirement Committee of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995).  The scope of this review is "narrow":  The Court must defer to the Pension's interpretation of the Plan if it is reasonable, even if there is an alternative, reasonable interpretation.  *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442–43 (2d Cir. 1995); *see also Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 601 (2d Cir. 1983) ("Where both the trustees of a pension fund and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control.")  Only when a plan administrator's interpretation is inconsistent with the plain words of the plan, or the plan administrator imposes a standard not within the plan, may a court find an abuse of discretion.  *See Miles*, 698 F.2d at 599.

Thus, the Court must decide whether the Pension interpreted the Plan reasonably when it denied Haby death benefits.  The Pension interprets Section 1.3 of the Plan as providing that the terms in effect at the time of Clifton's termination dictate whether Haby is entitled to death benefits.  If the terms in effect when Clifton stopped working at TWC apply, then nothing in the

5

Plan would entitle Haby to death benefits.[3]  Haby rightly points out, however, that Section 1.3 is ambiguous here — it only establishes that the terms in effect when an employee was terminated govern benefit determinations for participants whose employment terminated *before* the Restatement Date.  (Dkt. No. 24-2 at 20.)  Section 1.3 is silent on how to interpret the Plan for employees, like Clifton, who were terminated *after* the Restatement Date.  Haby interprets Section 1.3's silence to mean the entire Plan as of a participant's last day at TWC applies for participants whose time at TWC ended after the Restatement Date.  Under Haby's interpretation, if a term was in the Plan at the time of an employee's termination, then that term controls even if was not in effect at the time of termination — *if* the term is presently in effect.

But it is not enough for Haby to merely reveal an ambiguity in the Plan, or to offer a plausible — even reasonable — alternative interpretation.  Haby must show that the Pension's interpretation is unreasonable.  This is where Haby's claim fails.  The Pension's interpretation of Section 1.3 is not only consistent with the Section's plain words, but explicitly supported elsewhere in the Plan.  Section 16.3 plainly states that benefits shall be determined based on "the provisions of the Plan as *in effect* on such Participant's Termination of Employment," unless the Plan provides expressly otherwise. (Dkt. No. 24-2 at 129) (emphasis added).  Haby points to no provision that supersedes this default rule for interpreting the Plan; the Court's review of the Plan does not uncover one either.

The Pension's deciding that Section 8.1(a) does not confer death benefits to the beneficiary of a participant who stopped working at TWC before the Section went into effect is

---

[3] The parties' motions briefly discuss other provisions of the Plan that could have entitled Haby to death benefits.  However, since Clifton did not elect to provide a survivor benefit or make contributions to the Plan, the parties agree that those provisions do not control here.  (Dkt. No. 26 at 4–5; Dkt. No. 28 at 2).

thus not "add[ing] additional language to the Plan that is not there," as Haby asserts. (Dkt. No. 24 at 7.) Section 8.1(a) states that it is "Effective January 1, 2000" (Dkt. No. 24-2 at 107), which is after Clifton's termination. Nothing in the text of Section 8.1(a) prescribes whether it applies to Plan participants whose employment terminated before 2000. But Sections 1.3 and 16.3 require benefit determinations to be made based on the terms *in effect* when a participant's employment at TWC ended. That the Pension would require Clifton to have worked an hour after January 1, 2000 for Section 8.1(a) to apply and make Haby eligible for death benefits here is therefore reasonable. Accordingly, the Pension's interpretation is entitled to deference, and the Court concludes it is not an abuse of discretion.[4]

---

[4] Because the Pension is responsible for evaluating and paying benefit claims, Haby asserts there is a conflict of interest the Court must consider in determining whether there is an abuse of discretion. (Dkt. No. 24 at 9–10 (citing *Metro Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008)).) Yet Haby's only evidence of this conflict of interest influencing the Pension is the Pension's interpreting the Plan to deny Haby death benefits. (Dkt. No. 24 at 9–10; Dkt. No. 28 at 7.) That is not enough. Unlike in the case Haby cites, *Latronica v. Local 1430 International Brotherhood of Electrical Workers Pension Fund*, there is no evidence in the administrative record of this conflict of interest influencing the Pension's interpretation of the Plan. 403 F. Supp. 3d 287, 301–03 (2019) (giving significant weight to a pension fund's conflict of interest where the fund provided different reasons to the plaintiff for its benefits determination than the reasons it discussed internally, offered inherently contradictory explanations, and relied on weak evidence). Without evidence that the Pension's "conflict of interest as evaluator and payor of benefits influenced its reasonable interpretation," the Court does not give the Pension's "conflict of interest any weight in [its] review." *Hobson v. Metropolitan Life Ins. Co.*, 574 F.3d 75, 83 (2009).

### IV. Conclusion

For the foregoing reasons, Haby's motion for summary judgment is DENIED and the Pension's cross-motion for summary judgment is GRANTED.

The Clerk of Court is directed to close the motions at Docket Numbers 24 and 25, to enter judgment for the Defendant, and to close this case.

SO ORDERED.

Dated: September 1, 2021
       New York, New York

_____
J. PAUL OETKEN
United States District Judge